**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| SAUL NAJERA, *et al.*, | § | |
|       Plaintiffs, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-06-1003 |
| | § | |
| M/V CLIPPER LIS, her equipment and | § | |
| appurtenances, etc., *in rem,* | § | |
|       Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION ON THE MOTION FOR SUMMARY
JUDGMENT BY LLOYD'S REGISTER NORTH AMERICA, INC.**

This matter was referred by United States District Judge Lee H. Rosenthal, for full pre-trial management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket Entry #10). In the pending motion, Third-Party Defendant Lloyd's Register North America, Inc. ("Lloyd's") seeks summary judgment on claims of negligence, "breach of contract and/or warranty," indemnification, and contribution by Third-Party Plaintiff Colas Rose, Ltd. ("Colas Rose"). (Lloyd's Motion for Summary Judgment ["Motion"], Docket Entry #129). Colas Rose has responded, and Lloyd's has replied. (Response, Docket Entry #136; Reply, Docket Entry #141; Sur-Response, Docket Entry #148; Sur-Reply, Docket Entry #155; Second Sur-Response, Docket Entry #158). After considering the pleadings, the evidence submitted, and the applicable law, it is RECOMMENDED that Lloyd's motion be DENIED.

**Background**

Saul Najera, and his family,[1] filed this action seeking damages for injuries that he suffered when the ship's crane that he was operating separated from its base. (Motion at 2; Response at 2; Plaintiffs' Second Amended Complaint, Docket Entry #79, at 5). The ship, the M/V Clipper Lis, is

---

[1] Collectively referred to as "the Najera Plaintiffs."

owned by Colas Rose.  (Response at 2).  On March 23, 2006, and just hours before Najera's accident

occurred, the crane had been inspected by an employee of Lloyd's.  (Third-Party Complaint

["Complaint"], Docket Entry #24, at 4-5; Answer to Third-Party Complaint, Docket Entry #26, at 2).

 In its action, Colas Rose alleges that the M/V Clipper Lis:

> employed Lloyd's to inspect each of the vessel's cargo cranes, including the no. 1
> crane at issue herein, in connection with a mandatory annual survey required by
> [International Labour Organization ("ILO")] Convention 152 and Recommendation
> 160.  That inspection was carried out by Lloyd's surveyor Christopher Rydzkowski
> on the day of and immediately prior to this accident.

(Complaint at 4-5).  Colas Rose claims that Lloyd's is liable for negligence and "breach of contract

and/or warranty," and it seeks indemnification and contribution for its liability to Plaintiffs.  (*Id*. at

7).  In fact, Colas Rose summarizes its claim against Lloyd's as follows:

> Colas Rose Ltd. sustained significant damages to the M/V Clipper Lis and its
> business as a result of the incident made the basis of this lawsuit.  To the extent that
> those damages were proximately caused, in whole or in part, by any unsafe condition
> in the crane, the damages were proximately caused by Lloyd's failure to detect and
> warn vessel interests regarding that condition and/or its breach of contractual and
> warranty obligations.

(*Id*.).

Lloyd's, however, argues that it is immune from liability.  (Motion at 6 and Ex. 1).  It

contends, first, that maritime choice-of-law principles dictate that this court apply Bahamian law.

(*Id*. at 4).  Next, it argues that the inspection was made pursuant to Bahamian regulations, as a

requirement for vessels registered in that country.  (*Id*. at 6 and Ex. 1).  And, Lloyd's points out, the

Bahamian Merchant Shipping Act of 1976 grants immunity to any party who performs or exercises,

in good faith, "any power, authority, or duty conferred or imposed on him under the Act."  (*Id*. at 7,

Ex. 1, p.5).  Lloyd's contends that the inspection at issue falls within this provision, so that, under

2

Bahamian law, it is immune from suit.[2]  (*Id*. at 4).  Having considered the pleadings, the evidence

submitted, and the applicable law, it is recommended that Lloyd's motion for summary judgment be

denied.

**Standard of Review**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving

party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).  Under Rule 56(c), the

moving party "bears the initial burden of 'informing the district court of the basis for its motion, and

identifying those portions of [the record] which it believes demonstrate the absence of a genuine

issue of material fact.'"  *Taita Chem. Co. v. Westlake Styrene Corp*., 246 F.3d 377, 385 (5th Cir.

2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see Malacara v. Garber*, 353

F.3d 393, 404 (5th Cir. 2003).  The party moving for summary judgment "'must demonstrate the

absence of a genuine issue of material fact,' but 'need not negate the elements of the non movant's

case.'"  *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid*

*Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994)); *see Wallace v. Texas Tech Univ*., 80 F.3d 1042,

1047 (5th Cir. 1996).  If the moving party fails to meet its initial burden, the motion for summary

judgment must be denied, regardless of the non movant's response.  *See Kee v. City of Rowlett*, 247

F.3d 206, 210 (5th Cir. 2001); *Little*, 37 F.3d at 1075.

When the moving party has met its Rule 56 burden, the non moving party cannot survive a

motion for summary judgment merely by resting on the allegations in its pleadings.  *See Lincoln*

*Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 50 (5th Cir. 2005); *McCallum Highlands, Ltd. v.*

*Washington Capital Dus, Inc*., 66 F.3d 89, 92 (5th Cir. 1995).  Instead, it "must 'go beyond the

---

[2] It does not appear that Lloyd's has moved for summary judgment on any basis other than immunity.

pleadings and designate specific facts showing that there is a genuine issue for trial.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075); *see Izen v. Catalina*, 398 F.3d 363, 366 (5th Cir. 2005); *Taita Chem. Co.*, 246 F.3d at 385.  Further, it "'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 87 (1986)); *see Boudreaux*, 402 F.3d at 540.  To meet its burden, the non moving party must present "significant probative" evidence indicating that there are issues of fact remaining for trial.  *See Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000); *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994).  In deciding a summary judgment motion, "[t]he evidence of the non movant is to be believed, and all justifiable inferences are to be drawn in its favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Taita Chem. Co.*, 246 F.3d at 385.

**Discussion**

Neither party now before the court disputes that federal maritime choice-of-law principles govern this dispute.  (Motion at 5; Response at 4).  Those principles were articulated by the United States Supreme Court, long ago, in *Lauritzen v. Larsen*, 345 U.S. 571 (1953), and *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306 (1970).  *See Karim v. Finch Shipping Co.*, 265 F.3d 258, 271 n.18 (5th Cir. 2001).  Those cases direct the trial courts to examine the following, nonexhaustive list of factors to determine the appropriate governing law in a maritime claim:[3] (i) the site of the wrongful act; (ii) the law of the ship's flag; (iii) the domicile of the injured party; (iv) the allegiance or domicile of the shipowner; (v) the site the contract was made; (vi) the accessibility of a foreign forum; (vii) the law of the forum; and (viii) the shipowner's base of operations.  *See Rhoditis*, 398 U.S. at 309; *Lauritzen*,

---

[3] While these factors were derived in cases involving the Jones Act, in *Romero v. International Term. Oper. Co.*, 358 U.S. 354 (1959), the Court declared the factors equally applicable to cases arising under general maritime law.  *See*

345 U.S. at 583-90; *Karim*, 265 F.3d at 271 n.18; *Arochem Corp. v. Wilomi, Inc.*, 962 F.2d 496, 498 (5th Cir. 1992).  Further, in *Lauritzen*, the Court "stressed that the law of the flag is generally of cardinal importance," while suggesting that the accessibility of the foreign forum and the law of the current forum should be given little weight.  *Solano v. Gulf King 55*, 212 F.3d 902, 904 (5th Cir. 2000) (citing *Lauritzen*, 345 U.S. at 584-86, 589-91).

In its motion, Lloyd's asks the court to apply the law of the Bahamas, arguing that, because the M/V Clipper Lis flies the flag of that nation, the court should grant the "flag factor" controlling weight and apply Bahamian law.  (Motion at 3, 6).  Indeed, the fact that the ship flies the Bahamian flag does weigh in favor of applying the law of the Bahamas.  *See Lauritzen*, 345 U.S. at 583; *Solano*, 212 F.3d at 904.  However, the Fifth Circuit has recognized that this factor may deserve less deference, depending on the circumstances, in some cases which involve incidents onboard vessels in the territorial waters of a foreign country.[4]  *See id.* at 907 (citing *Chiazor v. Transworld Drilling Co.*, 648 F.2d 1015, 1019 (5th Cir. 1981)).  And, in any event, while of significant importance, the flag factor is not determinative; the court must also look to the other relevant factors when considering which law to apply.  *See Rhoditis*, 398 U.S. at 309; *Lauritzen*, 345 U.S. at 583-90; *Karim*, 265 F.3d at 271 n.18.  Although the argument is attractive, the court cannot base its decision on the flag factor, alone.

In this case, the wrongful acts occurred while the M/V Clipper Lis was in port at Greensport Terminal in Houston, Texas.  (Motion at Ex. 1, at 3; Response at Ex. A).  Clearly, then, the first *Lauritzen* factor—the site of the wrongful act—supports the application of United States law.  As to

---

*Symonette Shipyards, Ltd. v. Clark*, 365 F.2d 464, 468 n.3 (5th Cir. 1966).
[4] Other courts have reached the same conclusion.  *See, e.g.*, *Phillips v. Amoco Trinidad Oil Co.*, 632 F.2d 82, 87 (9th Cir. 1980); *Gund v. Philbrook's Boatyard*, 374 F. Supp. 2d 909, 912 (W.D. Wash. 2005); *Sealord Marine Co. v. American Bur. of Shipping*, 220 F. Supp. 2d 260, 268 (S.D.N.Y. 2002); *Galapagos Corporacion Turistica v.*

the next factor, because this is a third-party action for indemnity and contribution, both the domicile of the injured Najera Plaintiffs and the domicile of the injured Third-Party Plaintiff should be considered.  Most of the Najera Plaintiffs are United States residents.[5]  (Second Amended Complaint at 2).  As to those Plaintiffs, then, the third *Lauritzen* factor favors applying United States law.  On the other hand, the Third-Party Plaintiff, Colas Rose, is an entity registered under the laws of Liberia, but it has its principal place of business in Nassau, Bahamas.  (Motion at 3).   For that reason, its domicile and those factors involving the shipowner's base weigh in favor of applying Bahamian law.  Apparently, the parties do not question the accessibility of the United States and Bahamian courts, and so that factor does not bear on this case. The factor concerning the law of the current forum, however, weighs in favor of applying United States law.  And, even though it does not fit within any of the enumerated factors, it is certainly significant that Lloyd's is a Delaware corporation that has its principal place of business in Houston, Texas.  (Complaint at 4; Answer at 2, 5).  This fact, as well, favors the application of United States law.

The fifth factor, however, which examines where the contract was made, is problematic.  In its complaint, Colas Rose alleges a "breach of contract and/or warranty," among other things.  (Complaint at 7).  In its response, however, Colas Rose denies the existence of any contract that is relevant to this dispute, and states as follows:

> there is no contract between Lloyd's and Colas Rose, Ltd. related to the survey performed pursuant to the ILO Convention 152 upon the No. 1 crane aboard the M/V Clipper Lis on March 23, 2006, immediately prior to the incident made the basis of this suit.  While Colas Rose Ltd. supports the argument that the General Maritime Law of the United States applies to this matter, it denies that it applies as the result of the existence of any alleged contract between the parties.

---

*Panama Canal Comm'n*, 190 F. Supp. 2d 900, 906 (E.D. La. 2002).
[5] Only one of the Najera Plaintiffs, a resident of Mexico, lives outside the United States.  (Second Amended Complaint at 2).

(Response at 3).  If no contract exists, of course, that factor is not relevant to the choice-of-law

anaylsis.  There is no doubt, however, that Colas Rose somehow engaged Lloyd's to perform the

inspection, and that the inspection is a crucial element of the claims against that third-party

defendant.  (*See id*. at 2-3; Complaint at 4-7).  Unfortunately, neither party has produced a copy of

any agreement that specifically covers the inspection.  (*See* Second Sur-Response at 2 [noting that

Lloyd's has failed to respond to requests to produce such a contract]).  Colas Rose, however, has

shown, by affidavit, that Lloyd's was to perform this particular inspection to comply with the ILO

Convention.  (Response at 2).  It explains that, at least once a year, the ILO requires that "every

lifting appliance and every item of loose gear" onboard a vessel be "thoroughly examined and

certified by a competent person."  (*Id*. at 2 and Ex. A [citing ILO Convention 152, art. 23]).  It also

submits an affidavit from Charles Harrison, who states that he knows the following to be true:

> Lloyd's Register North America inspected each of the cargo cranes aboard the M/V
> Clipper Lis in connection with a mandatory Annual Survey as required by the
> International Labour Office (ILO) Convention 152 and Recommendation 160 on
> March 23, 2006, prior to the collapse of the vessel's No. 1 crane which serves as the
> basis for the referenced lawsuit.

(*Id*. at Ex. A at 1).  While none of this evidence indicates where any agreement was made, it does

suggest that the inspection was to comply with the requirements of the ILO Convention.  Standing

alone, this evidence does not favor the application of Bahamian law over that of the United States.

Lloyd's does not dispute that the inspection is required by the ILO Convention.  Instead, it

argues that the inspection was actually performed to ensure compliance with Bahamian regulations.

(Motion at 3, 6 and Ex. 1; *see* Colas Rose's Answer, Docket Entry #81, at 2 [regarding registration

of vessel]).  It then claims that Bahamian regulations, in turn, incorporate the relevant provisions of

the ILO Convention, so that the inspection, coincidentally, satisfies the requirements of both

regimes.  (Motion at Ex. 1; Sur-Reply at Exhibits [affidavit of Andrew Kennedy and evidence of agreement between Lloyd's and Bahamian Maritime Authority]).

In an attempt to show that the inspection in question was arranged specifically to comply with Bahamian regulations, Lloyd's offers an affidavit from Philip Dunkley ("Dunkley"), senior partner of the Bahamian law firm of Higgs & Johnson.  (Motion at Ex. 1; *see also* Sur-Reply at Exhibits [Dunkley's Supplemental Affidavit]).  In his affidavit, however, Dunkley never reaches that conclusion.  Instead, he merely states that the understanding that Lloyd's inspection "was conducted pursuant to the statutory requirement of [Bahamian] annual safety surveys" is just one of the "assumptions of fact that [he had] been asked to make for the purpose of providing [his] opinion." (*Id*. at Ex. 1, at 3).  In a later portion of his affidavit, Dunkley makes clear that it is only his *opinion* that Bahamian law "covers [Lloyd's] and the surveys conducted by them of the Clipper Lis, including its crane which failed on 23rd March, 2006."  (*Id*. at Ex. 1, at 12).   Given these circumstances, then, Lloyd's offers no proof that the inspection was arranged pursuant to the requirements of Bahamian-registered vessels, as opposed to the requirements of the ILO Convention alone.  As a result, the fifth *Lauritzen* factor—the site the contract was made—does not favor the application of the law of the Bahamas.  Indeed, the most compelling facts in this case weigh in favor of the application of United States law as opposed to the law of the Bahamas:  the location where the wrongful act occurred; the domicile of the injured Najera Plaintiffs; the domicile of the alleged wrongful party; and the law of the forum.  *See Rhoditis*, 398 U.S. at 309; *Lauritzen*, 345 U.S. at 583-90; *Karim*, 265 F.3d at 271 n.18; *Arochem Corp.*, 962 F.2d at 498.  For these reasons, Lloyd's has not shown that the court should apply Bahamian law, and summary judgment on that issue is not warranted.

8

Further, even if the court were to assume that the inspection was done to comply with Bahamian law, and consequently applied that law to this case, it is not clear whether Lloyd's is entitled to assert immunity, in any event. The immunity provision upon which it relies is contained in the Bahamian Merchant Shipping Act of 1976, which provides as follows:

> Every officer appointed under this Act, and every person appointed or authorized under this Act for any purpose of this Act, shall have immunity from suit in respect of anything done by him in good faith in the exercise of performance, or in the purported exercise or performance, of any power, authority, or duty conferred or imposed on him under the Act.

(*Id*. at 7, Ex. 1, p.5). The Bahamas Maritime Authority administers the requirements for vessels that fall within the provisions of the Act. (*See id*. at 6 and Ex. 1). In 1999, Lloyd's entered into an agreement with the Bahamian Maritime Authority which purports to extend immunity to Lloyd's for its conduct when it performs some specific inspections of Bahamian-registered vessels. (*Id*.; Response at 3). Under that agreement, if Lloyd's performs certain designated inspections to ensure that vessels are in compliance with Bahamian regulations, it may be entitled to assert the statutory immunity. (Motion at 6-7 and Ex. 1). The agreement, called the Agreement Governing the Delegation of Statutory Certification Services for Vessels Registered in the Commonwealth of the Bahamas, contains an apparently exhaustive list of the statutory certification services for which Lloyd's can claim immunity. (Motion at Ex. 1, Tab 1, at Appendix 1; Sur-Response at 2; Sur-Reply at Exhibits [Appendix 1]). This list, however, does not expressly reference the inspections required by the ILO Convention 152 and Recommendation 160. (Response at 4; Sur-Response at 2; Sur-Reply at Exhibits [Appendix 1]). While other portions of the agreement do reference the relevant ILO provisions, Appendix 1 does not. The applicable provision, then, is the one that that states, "Authorisations for services outside the scope of Appendix 1 will be dealt with as mutually agreed

on a case-by-case basis." (Motion at Ex. 1; Sur-Reply at Exhibits). Lloyd's has submitted no evidence to show that a separate agreement renders it immune from suit for performing the inspection at issue. As a result, Lloyd's has not met its burden to show that it is entitled to immunity for performing the particular inspection made the basis of Colas Rose's claims. Absent such a showing, the court cannot grant summary judgment on its claim of immunity.

In sum, none of Lloyd's evidence controverts Colas Rose's evidence that the inspection was performed in compliance with the ILO Convention 152. And none of Lloyd's evidence shows that the agreement was made in the Bahamas, or was performed as a requirement of Bahamian law, either separate from, or in addition to, ILO Convention 152 requirements. More importantly, Lloyd's has not shown that the weight of the *Lauritzen* factors favors the application of Bahamian law. Under these circumstances, the court should continue to apply the law of the forum. Moreover, even if the court did look to Bahamian law, Lloyd's has not shown that it would be entitled to immunity in this instance. As a consequence, genuine issues of material fact remain on all of these issues, and summary judgment is not warranted.

**Conclusion**

Accordingly, it is **RECOMMENDED** that Third-Party Defendant Lloyd's Motion for Summary Judgment be **DENIED**.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have ten business days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c), General Order 02-13, S.D. Texas. Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

10

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the chambers of Judge Lee H. Rosenthal, Room 11535, and to the chambers of the undersigned, Room 7007.

**SIGNED** at Houston, Texas, this 2nd day of May, 2008.

_____
**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**